UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PATRICK F. MIFSUD and
ENTERTAINMENT EXPRESS, INC.,
d/b/a Entertainment Limousine,

                    Plaintiffs,

v.

UBER TECHNOLOGIES, INC.;
JOHN DOE; JANE DOE;
SHARON EDGAR; JEAN RUESTMAN;
ROB PEARSON; BRIAN BARNUM;
MICHELLE WEBER-CURRIE;
ROBBIE SMITH; and MICHAEL KRUMM,

                    Defendants.

Case No.:

Hon.

_____/

BEN M. GONEK (P43716)
ELENA DJORDJESKI (P79992)
Law Offices of Ben M. Gonek, PLLC
Attorneys for Plaintiffs
500 Griswold Street, Suite 3500
Detroit, Michigan 48226
(313) 962-5210
Fax: (313) 962-4559
_____/

## COMPLAINT AND JURY DEMAND

      Plaintiffs, Patrick F. Mifsud and Entertainment Express, Inc., by and through their

attorneys, Law Offices of Ben M. Gonek, PLLC, complain against Defendants Uber Technologies,

Inc., John Doe, Jane Doe, Sharon Edgar, Jean Ruestman, Rob Pearson, Brian Barnum, Michelle

Weber-Currie, Robbie Smith, and Michael Krumm as follows:

1

## Parties, Jurisdiction, and Venue

1. Plaintiff Entertainment Express, Inc., d/b/a Entertainment Limousine ("Entertainment Express"), is a corporation organized and existing under the laws of the State of Michigan. Entertainment Express has its corporate registered office at 6986 Telegraph Road, Dearborn Heights, Michigan. For over twenty years, Entertainment Express provided for-hire limousine and motor-bus transportation services throughout the Detroit metropolitan area ("Metro Detroit").

2. Plaintiff Patrick F. Mifsud is a resident of Wayne County, Michigan. Plaintiff Mifsud is the owner of Entertainment Express.

3. Defendant Uber Technologies, Inc., ("Uber") is a corporation organized and existing under the laws of the State of Delaware. Uber maintains its principal place of business in San Francisco, California. Uber is licensed and engaged in business in the State of Michigan. Uber conducts business in Wayne County, Michigan.

4. Uber trademarks itself as "Everyone's private driver," and provides for-hire limousine transportation services throughout Metro Detroit and the State of Michigan.

5. Defendant John Doe provides for-hire transportation services upon the public roads of the State of Michigan as a driver for Uber.

6. Defendant Jane Doe provides for-hire transportation services upon the public roads of the State of Michigan as a driver for Uber.

7. Defendants John Doe and Jane Doe are hereinafter collectively referred to as "Uber Drivers" or "Uber's drivers."

8. Upon information and belief, Uber and Uber Drivers provide for-hire transportation services throughout Metro Detroit and the State of Michigan in violation of the Limousine

Transportation Act, MCL 257.1901 et seq., and the Michigan Vehicle Code, MCL 257.1, et seq.

9.  Defendant Sharon Edgar is employed by the Michigan Department of Transportation ("MDOT") as Administrator of the Office of Passenger Transportation ("OPT"). The OPT administers MDOT's passenger transportation programs, including for-hire passenger regulation. Defendant Edgar is being sued in her individual capacity.

10. Defendant Jean Ruestman is employed by MDOT as Manager of the Program Administration Section. Defendant Ruestman is being sued in her individual capacity.

11. Defendant Rob Pearson is employed by MDOT as Supervisor of the Bus and Limousine Regulatory Unit. Upon information and belief, Defendant Pearson is responsible for day-to-day administration of the Limousine Transportation Act and the Motor Bus Transportation Act. Defendant Pearson is being sued in his individual capacity.

12. Defendant Brian Barnum is employed by MDOT as a Commercial Vehicle Safety Specialist. Upon information and believe, Defendant Barnum is responsible for passenger commercial vehicle equipment safety and maintenance issues in the Metro Detroit area. Defendant Barnum is being sued in his individual capacity.

13. Defendant Michelle Weber-Currie is employed by MDOT as a Regulatory Affairs Analyst. Upon information and belief, Defendant Weber-Currie is responsible for the day-to-day administration of the Limousine Transportation Act and the Motor Bus Transportation Act. Upon information and belief, Defendant Weber-Currie performs all functions relating to MDOT's for-hire vehicle licensure process, including insurance compliance, fee collection, safety certification, decal issuance, complaints, vehicle registrations, renewals, and enforcement issues. Defendant Weber-Currie is being sued in her individual capacity.

14. Defendant Robbie Smith is employed by MDOT as a Regulatory Affairs Analyst. Upon information and belief, Defendant Smith is responsible for the day-to-day administration of the Limousine Transportation Act and the Motor Bus Transportation Act. Upon information and belief, Defendant Smith performs all functions relating to MDOT's for-hire vehicle licensure process, including insurance compliance, fee collection, safety certification, decal issuance, complaints, vehicle registrations, renewals, and enforcement issues. Defendant Smith is being sued in her individual capacity.

15. Defendant Michael Krumm is captain and commander of the Michigan State Police Commercial Vehicle Enforcement Division. Defendant Krumm is being sued in his individual capacity.

16. At all times relevant and material to the facts of this case, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm were each acting within the scope of their employment and under color of law.

17. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm were each charged with the duty and obligation to execute their lawful, statutory duties within the parameters set forth by the constitution and laws of the State of Michigan and of the United States, and were not to subject a private citizen, or cause a private citizen to be subjected to, the deprivation of any rights, privileges, or immunities secured by the Constitution and/or laws of the State of Michigan and/or of the United States.

18. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm are not entitled to qualified immunity or statutory immunity.

19. Jurisdiction is vested in the United States District Court pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; and 28 U.S.C. §1367.

20. Venue is appropriate in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. §1391. The events, transactions, and occurrences which gave rise to Plaintiffs' claims occurred in Wayne County, Michigan.

## General Allegations

21. To ensure that the public has access to safe and uniform means of vehicle-for-hire transportation, the State of Michigan has developed a number of laws and regulations to protect the riding public. Limousine and other for-hire transportation companies must abide by these laws and regulations, which were designed to protect consumers, ensure public safety, and safeguard competition.

22. Uber acts and holds itself out as a transportation company that provides for-hire transportation services to the public, requests for which are generated by a mobile phone application ("Uber App").

23. To request a ride with Uber, a consumer must download and access the Uber App, sign-up for an account, and input his or her payment information. The consumer then selects an Uber transportation service. After selecting an Uber transportation service, the consumer inputs his or her pick-up location and destination location. Uber then directs one of its drivers to the consumer's location and charges the consumer for the transportation service.

24. In Metro Detroit, consumers have a choice of five different Uber transportation services: Uber-X, UberSELECT, UberBLACK, UberSUV, or Uber-XL. Each of these services is a limousine service and is provided in a limousine, as these terms are defined under Michigan law.

25. Uber-X is Uber's low-cost, for-hire limousine service with a seating capacity of 5 passengers or less, including the driver. Uber Drivers provide Uber-X services in their own

personal motor vehicles. Uber-X vehicles are not registered as commercial vehicles with the State of Michigan, do not have commercial license plates, and do not carry continuous commercial liability insurance. Uber does not require its Uber-X drivers to have chauffer's licenses, and none of the Uber Drivers who provide Uber-X services are authorized by MDOT to provide limousine services in the State of Michigan.

26. UberSELECT is Uber's higher-end sedan service. UberSELECT is a for-hire limousine service with a seating capacity of 5 passengers or less, including the driver. Uber Drivers provide UberSELECT services in their own personal motor vehicles. UberSELECT vehicles are not registered as commercial vehicles with the State of Michigan, do not have commercial license plates, and do not carry continuous commercial liability insurance. Uber does not require its UberSELECT drivers to have chauffer's licenses, and none of the Uber Drivers who provide UberSELECT services are authorized by MDOT to provide limousine services in the State of Michigan.

27. UberBLACK is a high-end luxury sedan service. UberBLACK is a for-hire limousine service with a seating capacity of 5 passengers or less, including the driver. Uber Drivers provide UberBLACK services in their own personal motor vehicles. Upon information and belief, UberBLACK vehicles are not registered as commercial vehicles with the State, do not have commercial license plates, and do not carry continuous commercial liability insurance. Upon information and belief, Uber does not require its UberBLACK drivers to have chauffer's licenses, and none of the Uber Drivers who provide UberBLACK services are authorized by MDOT to provide limousine services in the State of Michigan.

28. UberSUV is a premium for-hire limousine service, with a seating capacity of 7 passengers or less, including the driver. Uber Drivers provide UberSUV services in their own personal

6

motor vehicles. Upon information and belief, UberSUV vehicles are not registered as commercial vehicles with the State of Michigan, do not have commercial license plates, and do not carry continuous commercial liability insurance. Upon information and belief, Uber does not require its UberSUV drivers to have chauffer's licenses, and none of the Uber Drivers who provide UberSUV services are authorized by MDOT to provide limousine services in the State of Michigan.

29. UberXL is a for-hire limousine service for six or more passengers. Uber Drivers provide UberXL services in their own personal motor vehicles. UberXL vehicles are not registered as commercial vehicles with the State of Michigan, do not have commercial license plates, and do not carry continuous commercial liability insurance. Uber does not require its UberXL drivers to have chauffer's licenses, and none of the Uber Drivers who provide UberXL services are authorized by MDOT to provide limousine services in the State of Michigan.

30. In 2013, Uber and Uber Drivers began providing for-hire transportation services throughout Metro Detroit, in violation of the Limousine Transportation Act, MCL 257.1901 et seq., and the Michigan Vehicle Code, MCL 257.1, et seq.

31. The Limousine Transportation Act regulates persons who transport passengers by limousine and applies to all limo carriers of passengers. MCL Ch. 257, Act 271 Note; MCL 257.1907.

32. A "limo carrier of passengers" is defined under the statute as "a person who, either directly or through any device or arrangement, holds himself or herself out to the public as willing to undertake for hire to transport by limousine from place to place over the public highways

of this state persons who may choose to employ him or her for that purpose." MCL 257.1903(f).

33. The Limousine Transportation Act defines "person" as "an individual, sole proprietorship, partnership, association, corporation, or other legal entity." MCL 257.1903(h).

34. The Limousine Transportation Act defines "through any device or arrangement" as "any and all methods, means, agreements, circumstances, operations, or subterfuges under which a person undertakes for hire to conduct, direct, control, or otherwise perform the transportation of passengers by limousine upon the public highways of this state." MCL 257.1903(k). "The public" is defined as "that part or portion of the general public which the limo carrier is ready, able, willing, and equipped to serve." MCL 257.1903(j).

35. The Limousine Transportation Act defines "limousine" as "a self-propelled motor vehicle used in the carrying of passengers and the baggage of the passengers for hire upon a public highway of this state with a seating capacity of 15 passengers or less, including the driver." MCL 257.1903(e).

36. Uber is a limo carrier of passengers as the term is defined in the Limousine Transportation Act. MCL 257.1903. Through its Uber App, Uber directs and/or controls the transportation of passengers by limousine upon the public highways of Michigan. Accordingly, Uber is subject to the rules and regulations of the Limousine Transportation Act. MCL 257.1907(1).

37. Uber Drivers are limo carriers of passengers as the term is defined in the Limousine Transportation Act. MCL 257.1903. Accordingly, Uber Drivers are subject to the rules and regulations of the Limousine Transportation Act. MCL 257.1907(1).

38. Plaintiffs are limo carriers of passengers as the term is defined in the Limousine Transportation Act. MCL 257.1903. Accordingly, Plaintiffs are subject to the rules and regulations of the Limousine Transportation Act. MCL 257.1907(1).

39. Under the Limousine Transportation Act, "[a] limo carrier of passengers shall not operate upon a public highway without first having obtained from [MDOT] a certificate of authority." MCL 257.1907(1).

40. In order to obtain a Certificate of Authority, a limo carrier of passengers must

   a.  be found "fit, willing, and able to provide the transportation service;"

   b.  pass an annual safety inspection conducted by a special mechanic;

   c.  have continuous commercial liability insurance, including bodily injury and property damage liability insurance in an amount of at least $1,000,000.00 for limousines with a seating capacity of 1 to 9 passengers, and $2,000,000.00 for limousines with a seating capacity of 10 to 15 passengers;

   d.  have personal injury protection insurance and property damage liability insurance in the amount mandated by the Insurance Code, MCL 500.3101 et seq.;

   e.  have adequate financial resources in order to pay for damage claims; and

   f.  pay any applicable fees, including a filing fee of $300.00 and a fee of $50.00 times the number of limousines to be used by the carrier to provide transportation for hire.

   MCL 257.1911-1917.

41. Under the Michigan Vehicle Code, commercial vehicles must be specially registered with the Secretary of State. The term "commercial vehicle" includes all motor vehicles used for the transportation of passengers for hire. MCL 257.7.

42. Under the Michigan Vehicle Code, it is a misdemeanor to operate a commercial vehicle that is not registered as such with the Secretary of State. MCL 257.215.

43. Furthermore, a commercial vehicle must have a valid commercial vehicle registration plate attached to it at all times. MCL 257.255. Indeed, it is a misdemeanor to drive a commercial vehicle with a regular license plate. MCL 257.256.

44. Moreover, under the Michigan Vehicle Code, "[a] person shall not drive a motor vehicle as a chauffeur unless that person holds a valid chauffeur's license." MCL 257.301(4). The term chauffeur includes "[a] person who operates a limousine." MCL 257.6(1)(e).

45. Additionally, the Michigan Vehicle Code mandates that no person shall knowingly employ any chauffeur to operate a motor vehicle without a chauffeur's license. MCL 257.327.

46. Despite the numerous regulatory requirements placed on for-hire vehicles, Uber and Uber Drivers knowingly operate in complete disregard of the law:

   a. Uber and Uber Drivers operate limousines for the transportation of persons for hire on the public roads of Michigan without Certificates of Authority issued by MDOT, in violation of the Limousine Transportation Act;

   b. Uber and Uber Drivers are not registered with MDOT as limo carriers;

   c. Uber and Uber Drivers do not have their vehicles inspected annually by mechanics certified under the Motor Vehicle Service and Repair Act, in violation of the Limousine Transportation Act;

   d. Upon information and belief, Uber and Uber Drivers operate without continuous bodily injury and property damage liability insurance, in violation of the Limousine Transportation Act and Michigan Vehicle Code;

e.  Upon information and belief, Uber and Uber Drivers operate without continuous personal protection insurance and property protection insurance, in violation of the Limousine Transportation Act;

f.  Uber and Uber Drivers operate without paying any of the fees or fines mandated by the Limousine Transportation Act and Michigan Vehicle Code;

g.  Uber and Uber Drivers operate commercial vehicles without commercial license plates, in violation of the Michigan Vehicle Code;

h.  Uber Drivers operate limousines without chauffeur's licenses, in violation of the Michigan Vehicle Code; and

i.  Uber allows its drivers to operate limousines without chauffeur's licenses, in violation of the Michigan Vehicle Code.

47. Despite the fact Uber and Uber Drivers operate in open and blatant disregard of the Limousine Transportation Act and Michigan Vehicle Code, upon information and belief, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm have never cited or fined Uber or its drivers for any of their violations.

48. For example, the Limousine Transportation Act requires limo carriers to submit to annual vehicle inspections by certified mechanics. Nevertheless, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm have not enforced the vehicle inspection requirements against Uber or otherwise required Uber to follow any inspection protocol for the vehicles that it deploys.

49. The Limousine Transportation Act also requires continuous commercial insurance in an amount specified under the Act. Nevertheless, Defendants Edgar, Reustman, Pearson,

Barnum, Weber-Currie, Smith, and Krumm have not enforced the commercial insurance requirements against Uber or Uber Drivers.

50. Most significantly, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm have allowed Uber and Uber Drivers to operate without valid Certificates of Authority and decals issued by MDOT.

51. Because Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm have not and will not apply the Limousine Transportation Act or Michigan Vehicle Code to Uber, the public is deprived of various protections and other benefits from Uber and Uber Drivers. Meanwhile, Uber and Uber Drivers enjoy a competitive advantage over limousine operators to whom Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm apply these laws and regulations.

52. By deliberately turning a blind eye to Uber's violations of the Limousine Transportation Act and Michigan Vehicle Code, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm have systematically imposed more onerous requirements on Plaintiffs than Uber, giving the latter a substantial competitive advantage regarding insurance, driver qualifications, vehicle qualifications, and other matters.

53. There is no rational basis for Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm to have imposed rigorous, costly, and time-consuming requirements on Plaintiffs, while not imposing those same requirements on Uber and Uber Drivers.

54. In early to mid-2015, Plaintiff Mifsud complained about these practices to various individuals, including Defendant Edgar and Defendant Barnum.

55. Specifically, Plaintiff Mifsud complained that the fines and fees associated with annual safety inspections, renewals of Certificates of Authority, and continuous commercial insurance were unfair and over-burdensome.

56. Plaintiff Mifsud also expressed his concern that the Limousine Transportation Act, Motor Bus Transportation Act, and Michigan Vehicle Code were being applied unequally to similarly situated persons. Specifically, Plaintiff Mifsud pointed out that Uber operated without Certificates of Authority, without annual safety inspections, and without continuous commercial insurance.

57. Thereafter, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm vigorously enforced the Limousine Transportation Act, Motor Bus Transportation Act, and/or Michigan Vehicle Code against Plaintiffs.

58. As a result, Plaintiffs' motor-bus and limousine operating licenses/Certificates of Authority were revoked on November 5, 2015, making Plaintiffs no longer authorized to provide for-hire passenger transportation services in the State of Michigan.

59. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm were, and still are, fully aware that Uber and its drivers operate in violation of the laws and regulations of the State of Michigan. Yet they have done nothing to prevent Uber or its drivers from providing for-hire transportation services to members of the public.

## COUNT I

**Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution**

**PLAINTIFFS v. DEFENDANTS EDGAR, REUSTMAN, PEARSON, BARNUM, WEBER-CURRIE, SMITH, AND KRUMM**

60. Plaintiffs incorporate, adopt, and re-allege the allegations in Paragraphs 1-59 of this Complaint as if fully set forth herein.

61. Count I of this Complaint arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

62. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm violated Plaintiffs' right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

63. Entertainment Express and Uber were similarly situated for-hire limousine transportation services.

64. Plaintiffs, Uber, and Uber Drivers all qualify as limo carriers under the Limousine Transportation Act; therefore, they are all subject to the Limousine Transportation Act's rules and regulations.

65. Plaintiffs, Uber, and Uber Drivers all operate commercial vehicles; therefore, they are all subject to the Michigan Vehicle Code's rules and safety regulations. MCL 257.7 ("'Commercial vehicle' includes all motor vehicles used for the transportation of passengers for hire.").

66. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm discriminated against Plaintiffs by enforcing the Limousine Transportation Act and Michigan Vehicle Code against Plaintiffs, while not enforcing the same laws and regulations against Uber and Uber Drivers.

67. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm cited and fined Entertainment Express for numerous violations of the Limousine Transportation Act and Michigan Vehicle Code, including but not limited to operating a limousine without a Certificate of Authority, operating a limousine without obtaining a safety inspection validated by a decal, operating a limousine without meeting insurance requirements, and various commercial vehicle safety defects.

68. Although Uber and Uber Drivers openly operate without Certificates of Authority, without safety inspections validated by a decal, without continuous commercial insurance in the amount required by law, without commercial vehicle plates, and without chauffer's licenses, among other things, upon information and belief, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm have not cited or fined Uber or its drivers for their violations of the Limousine Transportation Act and/or Michigan Vehicle Code.

69. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm had no rational justification for the unequal application of the Limousine Transportation Act and Michigan Vehicle Code.

70. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm's actions were arbitrary, capricious, and not reasonably related to legitimate governmental objectives.

71. Defendants' actions in enforcing the Limousine Transportation Act and Michigan Vehicle Code against Plaintiffs, but not against Uber, denied Plaintiffs equal protection of the laws in that Uber was, and still is, permitted to offer for-hire limousine services without

complying with the Limousine Transportation Act and Michigan Vehicle Code, while Plaintiffs are not so permitted.

72. It is wholly arbitrary and irrational to permit Uber to engage in for-hire limousine transportation services, while forbidding Entertainment Express from engaging in the same activity.

73. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm's disparate treatment of Uber and Entertainment Express lacked a rational basis.

74. Upon information and belief, Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm's disparate treatment regarding enforcement of the Limousine Transportation Act and Michigan Vehicle Code was motivated by a special animus toward Plaintiffs and/or special favoritism toward Uber and Uber Drivers.

75. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm's actions and inactions were intentional.

76. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm's knew or should have known that their actions were in violation of Plaintiffs' clearly established constitutional rights.

77. As a direct and proximate result of Defendants' actions or inactions, Plaintiffs were deprived of their constitutionally protected rights described above.

78. As a direct and proximate result of Defendants' actions or inactions, Plaintiffs have suffered and will continue to suffer substantial damages.

79. As a direct and proximate result of Defendants' violation of Plaintiffs' well-established Fourteenth Amendment rights, Plaintiffs have suffered economic and non-economic injuries, including, but not limited to, substantial and irreparable loss of good will and

business opportunity; loss of earnings; loss of revenue; mental and emotional distress; and loss of reputation and esteem in the community.

## COUNT II

**Violation of 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution**

**PLAINTIFFS v. DEFENDANTS EDGAR, REUSTMAN, PEARSON, BARNUM, WEBER-CURRIE, SMITH, AND KRUMM**

80. Plaintiffs incorporate, adopt, and re-allege Paragraphs 1-79 of this Complaint as if fully set forth herein.

81. Count II of this Complaint arises under 42 U.S.C. § 1983 and the First Amendment to the United States Constitution.

82. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm violated Plaintiffs' right to free speech guaranteed and protected by the First Amendment to the United States Constitution.

83. It is well established that private citizens have a First Amendment right to criticize government actions, policies, and officials.

84. Plaintiff Mifsud engaged in constitutionally protected speech under the First Amendment when he complained that MDOT's fines, fees, and practices were unfair.

85. Plaintiff Patrick Mifsud engaged in constitutionally protected speech under the First Amendment when he complained that MDOT was allowing Uber to operate in violation of the laws and regulations of the State of Michigan.

86. Plaintiff Patrick Mifsud engaged in constitutionally protected speech under the First Amendment when he complained that the laws and regulations of the State of Michigan were being enforced unequally.

87. After Plaintiff Mifsud made these complaints, Plaintiffs were subjected to adverse actions by Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm to wit: Plaintiffs' vehicles failed their annual safety inspections, Plaintiffs were fined thousands of dollars, Plaintiffs were issued a significant amount of MDOT citations, and Plaintiffs' operating licenses/Certificates of Authority were revoked. Upon information and belief, this was the first time that MDOT ever revoked a transportation company's operating license.

88. The adverse actions against Plaintiffs were prompted or caused by Plaintiff Mifsud's exercise of his First Amendment rights.

89. Plaintiff Patrick Mifsud's protected speech was a substantial or motivating factor for the adverse actions.

90. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm's adverse actions with respect to Plaintiffs would chill an ordinary person in the exercise of his or her First Amendment rights.

91. Defendants Edgar, Reustman, Pearson, Barnum, Weber-Currie, Smith, and Krumm knew or should have known that their conduct was in violation of Plaintiffs' clearly established constitutional rights.

92. As a direct and proximate result of Defendants' actions or inactions, Plaintiffs were deprived of their constitutionally protected rights.

93. As a direct and proximate result of Defendants' actions or inactions, Plaintiffs have suffered and will continue to suffer substantial damages.

94. As a direct and proximate result of Defendants' violation of Plaintiffs' well-established First Amendment rights, Plaintiffs have suffered economic and non-economic injuries,

including, but not limited to, substantial and irreparable loss of good will and business opportunity; loss of earnings; loss of revenue; mental and emotional distress; and loss of reputation and esteem in the community.

## COUNT III

**Common Law Unfair Competition**

**PLAINTIFFS v. DEFENDANTS UBER, JOHN DOE, AND JANE DOE**

95. Plaintiffs incorporate, adopt, and re-allege Paragraphs 1-94 of this Complaint as if fully set forth herein.

96. Michigan's common law of unfair competition prohibits unfair and unethical trade practices that are harmful to one's competitors or to the general public.

97. As providers of for-hire limousine transportation services in Metro Detroit, Uber and Entertainment Express are direct competitors.

98. Defendant Uber and its drivers engage in unfair and unethical trade practices that are harmful to their competitors and/or the general public, including Plaintiffs.

99. Upon information and belief, neither Uber nor Uber Drivers are authorized to provide any type of for-hire transportation service in the State of Michigan.

100. Defendant Uber undercuts its prices by operating in violation of the laws and regulations of the State of Michigan. Specifically, Defendant Uber undercuts its prices by not paying for, among other things, certificates of authority, annual inspections, continuous commercial insurance, commercial vehicle plates, chauffeur's licenses, registration fees, or identification decals, in violation of the Limousine Transportation Act and/or the Michigan Vehicle Code.

101.  By unlawfully operating for-hire limousine transportation services without incurring the expenses of compliance with Michigan laws and regulations, Uber and Uber Drivers unfairly compete with other limo carriers, including Plaintiffs.

102.  Defendant Uber and its drivers also engage in conduct that is fraudulent or deceptive and that tends to mislead the public. Uber advertises that it provides the safest rides and even has passengers pay a "Safe Rides Fee" for its services. Yet unlike other limousine carriers, Uber does not require its drivers to have a chauffer's license; Uber does not require its drivers to make their driving records available for review by passengers; Uber does not subscribe to the Commercial Look-Up Service provided by the Michigan Secretary of State; Uber does not require its drivers to submit to random drug testing; Uber does not have continuous commercial insurance; and, upon information and belief, there have been customer complaints in Michigan and other states about Uber drivers engaging in sexual assault, sexual harassment, and other inappropriate behavior.

103.  Moreover, the motor vehicles driven by Uber's drivers do not undergo the rigorous annual safety inspections that other limousines must undergo.

104.  Thus, Uber and Uber Drivers commit fraud by attempting to convince consumers that they operate legally, possess adequate insurance coverage, and are the safest rides available, all while failing to adhere to Michigan's laws and safety regulations.

105.  Uber's unfair and unethical practices have caused Plaintiffs to lose significant revenue and suffer reputational injury.

106.  As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer substantial damages.

107.  As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic and non-economic injuries, including, but not limited to, substantial and irreparable loss of good will and business opportunity; loss of earnings; loss of revenue; mental and emotional distress; and loss of reputation and esteem in the community.

## COUNT IV

### Unfair and Deceptive Trade Practices in Violation of the Michigan Consumer Protection Act, MCL 445.903

### PLAINTIFF MIFSUD v. DEFENDANTS UBER, JOHN DOE, AND JANE DOE

108.  Plaintiffs incorporate, adopt, and re-allege the allegations in Paragraphs 1-107 of this Complaint as if fully set forth herein.

109.  Uber and its drivers' failure to comply with the laws and regulations of the State of Michigan, as described herein, constitutes an unfair and deceptive practice that violates the Michigan Consumer Protection Act, MCL 445.903.

110.  Defendant's failure to comply with Michigan's laws and regulations regarding for-hire limousine transportation services harms the public interest by depriving the public of the rights and protections provided to passengers within those laws and regulations. These rights and protections include licensed, trained drivers, and safe, properly insured vehicles.

111.  By falsely representing that they operate legally, when they do not; that they possess adequate insurance coverage, when they do not; and that they are the safest rides available, when they do not adhere to Michigan's laws and safety regulations, Uber and Uber Drivers have unlawfully engaged in unfair, unconscionable, or deceptive practices.

112.  Defendants' unfair and deceptive practices have caused substantial injury to consumers and lawfully operating limo carriers, including, but not limited to, Plaintiff Mifsud, in his individual capacity, and Entertainment Express.

113. Uber's unfair and deceptive practices have caused Plaintiffs to lose significant revenue and suffer reputational injury.

114. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic and non-economic injuries, including, but not limited to, substantial and irreparable loss of good will and business opportunity; loss of earnings; loss of revenue; mental and emotional distress; and loss of reputation and esteem in the community.

115. Plaintiff Mifsud has been harmed in an amount to be determined at trial and seeks an injunction against Uber and Uber Drivers to enjoin further violations of MCL 445.903.

## COUNT V

**Misrepresentation of Services in Violation of Lanham Act, 15 U.S.C. §1125(a)(1)(B)**

**PLAINTIFFS v. DEFENDANTS UBER, JOHN DOE, AND JANE DOE**

116. Plaintiffs incorporate, adopt, and re-allege Paragraphs 1-115 of this Complaint as if fully set forth herein.

117. By representing to consumers in its commercial advertising and promotion that Uber and Uber Drivers are operating lawfully in the State of Michigan, Uber and Uber Drivers falsely describe facts and falsely represent facts, thereby misrepresenting the nature, characteristics, and qualities of its services, in violation of 15 U.S.C. § 1125(a)(1)(B).

118. Defendants' misrepresentations have caused harm to Plaintiffs.

119. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs have suffered economic and non-economic injuries, including, but not limited to, substantial and irreparable loss of good will and business opportunity; loss of earnings; loss of revenue; mental and emotional distress; and loss of reputation and esteem in the community.

## COUNT VI

**Violation of 18 U.S.C. §1962 (Racketeer Influenced and Corrupt Organizations Act)**

**PLAINTIFFS v. DEFENDANTS UBER, JOHN DOE, AND JANE DOE**

120. Plaintiffs incorporate, adopt, and re-allege Paragraphs 1-119 of this Complaint as if fully set forth herein.

121. Each of the Plaintiffs is a "person" under 18 U.S.C. §1961(3) and § 1964(c).

122. Each of the Uber Defendants is a "person" under 18 U.S.C. §1961(3) and §1962(c).

123. The Uber Defendants are "persons" under 18 U.S.C. §1961(3) and 1962(c).

124. The Illegal Limousine Enterprise of Defendants, described below, constitutes an "enterprise" within the meaning of 18 U.S.C. §1961(4) and § 1962(c), which "enterprise" was engaged in activities affecting interstate commerce at all times relevant to this Complaint.

125. Defendants Uber and Uber Drivers were, and are, associated with the Illegal Limousine Enterprise and have conducted or participated, directly or indirectly, in the management and operation of the affairs of the Illegal Limousine Enterprise in relationship to the Plaintiffs through a pattern of activity unlawful under 18 U.C.S. §1961(a), to wit: multiple, repeated violations of 18 U.S.C. §1343 (pertaining to wire fraud).

126. Defendants Uber and Uber Drivers have conducted and participated in, and are conducting and participating in, a fraudulent and illegal scheme to violate and evade Michigan's transportation laws and regulations by launching, offering, facilitating, providing, and operating limousine services in Michigan without first obtaining Certificates of Authority issued by MDOT; without meeting the insurance requirements provided in the Limousine Transportation Act; without submitting to annual safety inspections, as required by

Limousine Transportation Act; without having commercial vehicle plates, as required by the Michigan Vehicle Code; without having chauffer's licenses, as required by the Michigan Vehicle Code; and without paying any of the fines or fees mandated by the Limousine Transportation Act and Michigan Vehicle Code.

127. The Illegal Limousine Enterprise has the common purpose of obtaining illegal revenues through the collection of payment from the riding public by means of the aforementioned fraudulent and illegal schemes, through a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(1) and (5).

128. Uber and Uber Drivers have committed, and continue to commit, multiple, repeated, and continuous acts of wire fraud in violation of 18 U.S.C. §1343.

129. Uber and Uber Drivers commit wire fraud to further their illegal scheme to defraud the riding public by offering, facilitating, and providing limousine transportation services without authorization from MDOT and by collecting payment for such unauthorized services.

130. The Uber App has used and continues to use interstate wires.

131. When Uber Drivers log on to the Uber App to provide the unauthorized limousine services, they connect to the Uber website on servers in other states via the Internet, with radio and wire transmissions.

132. In addition, when Uber's customers use credit or debit cards to pay for the unauthorized limousine services, they use the Uber App, which connects them to the technology platforms of various financial institutions with servers in other states via the Internet, with radio and wire transmissions.

133. Each time the Uber App processes a credit card payment for one of Uber's unauthorized limousine transportation services—UberX, UberXL, UberSELECT, UberBLACK, or UberSUV—Uber and Uber Drivers are committing a separate act of wire fraud in violation of 18 U.S.C. §1343.

134. Upon information and belief, Uber and Uber Drivers have committed tens of thousands of acts of wire fraud relating to the collection of payment for unauthorized limousine services in Michigan, in violation of 18 U.S.C. §1343.

135. In addition, Uber and Uber Drivers have committed multiple, repeated, and continuous acts of wire fraud in violation of 18 U.S.C. §1343, by using the Internet, social media, and email to disseminate false and misleading information about the nature and quality of their unauthorized limousine transportation services, in order to fraudulently induce the riding public to use their services.

136. Each time Uber and Uber Drivers disseminate false information about their unauthorized limousine transportation services via the Internet, social media, and email, they make use of wire transmissions to further their scheme to defraud the riding public and Plaintiffs, and commit a separate act of wire fraud in violation of 18 U.S.C. §1343.

137. Upon information and belief, Uber and Uber Drivers have committed numerous other similar acts of wire fraud relating to false advertising in violation of 18 U.S.C. §1343, and continue to commit numerous other similar acts on an ongoing basis.

138. The actions of Uber and Uber Drivers constitute a conspiracy under RICO because Uber and Uber Drivers conspired to commit these RICO offenses and acted in furtherance thereof.

139. As direct and proximate result of the aforementioned violations of 18 U.C.S. §1962(c), each of the Plaintiffs has suffered substantial injury to its business or property within the meaning of 18 U.S.C. §1964(c), by reason of the violation of 18 U.S.C. §1962(c) committed by Uber and Uber Drivers, including, but not limited to, lost or reduced revenues and substantial and irreparable loss of goodwill and business opportunity with consumers and customers.

140. Under 18 U.S.C. §1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from Uber and Uber Drivers.

## RELIEF REQUESTED

Plaintiffs Patrick F. Mifsud and Entertainment Express, Inc., d/b/a Entertainment Limousine, respectfully request that this Honorable Court enter judgment against each Defendant, individually and jointly and severally, in whatever amount Plaintiffs are found to be entitled, to include all compensatory, special, exemplary, and/or punitive damages allowed by statute, case law and court rule(s), as well as the costs of this litigation, interest, and reasonable attorney fees.

Respectfully submitted,

**Law Offices of Ben M. Gonek, PLLC**

*/s/Ben M. Gonek*
BEN M. GONEK (P43716)
ELENA DJORDJESKI (P79992)
Attorneys for Plaintiffs
500 Griswold Street, Suite 3500
Detroit, MI 48226
Dated: January 7, 2016          (313) 962-5210 / Fax: (313) 962-4559

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PATRICK F. MIFSUD and
ENTERTAINMENT EXPRESS, INC.,
d/b/a Entertainment Limousine,

          Case No.:

      Plaintiffs,

          Hon.

v.

UBER TECHNOLOGIES, INC.;
JOHN DOE; JANE DOE;
SHARON EDGAR; JEAN RUESTMAN;
ROB PEARSON; BRIAN BARNUM;
MICHELLE WEBER-CURRIE;
ROBBIE SMITH; and MICHAEL KRUMM,

      Defendants.

_____/

## JURY DEMAND

    Plaintiffs, Patrick F. Mifsud and Entertainment Express, Inc., d/b/a Entertainment

Limousine, hereby demand a trial by jury in this matter.


          Respectfully submitted,

          **Law Offices of Ben M. Gonek, PLLC**

          */s/Ben M. Gonek*
          BEN M. GONEK (P43716)
          ELENA DJORDJESKI (P79992)
          Attorneys for Plaintiffs
          500 Griswold Street, Suite 3500
          Detroit, MI 48226
Dated: January 7, 2016        (313) 962-5210 / Fax: (313) 962-4559