UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK F. MIFSUD and
ENTERTAINMENT EXPRESS, INC.,
d/b/a Entertainment Limousine,

        Plaintiffs,

v.                                            Civil Case No. 16-10049
                                              Linda V. Parker

UBER TECHNOLOGIES, INC.,
JOHN DOE, JANE DOE, SHARON
EDGAR, JEAN RUESTMAN, ROB
PEARSON, BRIAN BARNUM,
MICHELLE WEBER-CURRIE,
ROBBIE SMITH, and MICHAEL KRUMM,

        Defendants.
_____/

## OPINION AND ORDER GRANTING MDOT DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

This lawsuit arises from the State of Michigan's requirement that for-hire limousine companies and its drivers, but not Defendant Uber Technologies, Inc. ("Uber") or its drivers, abide by the requirements of Michigan's Limousine Transportation Act and vehicle code. Plaintiffs are Patrick F. Mifsud and the company he owns, Entertainment Express, Inc. (collectively "Plaintiffs"), which for over twenty years provided for-hire limousine and motorbus transportation services throughout the metropolitan Detroit area ("Metro Detroit"). (Compl. ¶ 1, ECF No. 1.) Defendants are Uber, Uber drivers identified as John Doe and Jane

Doe, and the following State of Michigan Department of Transportation ("MDOT") employees: Sharon Edgar, Administrator of the Office of Passenger Transportation; Jean Ruestman, Manager of MDOT's Program Administration Section; Rob Pearson, Supervisor of MDOT's Bus and Limousine Regulatory Unit; Brian Barnum, an MDOT Commercial Vehicle Safety Specialist; and Michelle Weber-Currie and Robbie Smith, MDOT Regulatory Affairs Analysts (collectively "MDOT Defendants").[1]  (*Id.* ¶¶ 3-14.)

In their six-count Complaint, Plaintiffs allege that the MDOT Defendants' failure to require Uber and its drivers to adhere to the requirements of the Limousine Transportation Act and certain specifications of the Michigan Vehicle Code violates Plaintiffs' rights under the Equal Protection Clause of the United States Constitution (Count I).  Plaintiffs also allege that the MDOT Defendants retaliated against Plaintiffs in violation of their First Amendment rights after Mifsud voiced complaints about the State's unequal application of its laws (Count II).  Plaintiffs' claims alleging constitutional violations are brought pursuant to 42

---

[1] Plaintiffs also named as a defendant Michael Krumm, Captain and Commander of the Michigan State Police Commercial Vehicle Enforcement Division.  A stipulated order dismissing Krumm as a defendant was entered on April 20, 2016. (ECF No. 32.)

U.S.C. § 1983.[2]  In Counts III-VI of their Complaint, Plaintiffs assert claims against Uber and/or its drivers, only.

Presently before the Court is the MDOT Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 17.)  The motion has been fully briefed.  Finding the facts and legal arguments sufficiently presented in the parties' pleadings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting the MDOT Defendants' motion.

## I.    Standard for Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not

---

[2] To state a viable § 1983 claim, the plaintiff must show that the defendant, while acting under color of law, deprived the plaintiff of a right secured by the Constitution or laws of the United States.  *Marcillis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012).

3

"suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.

4

1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Thus, a court may take judicial notice of "other court proceedings" without converting a motion to dismiss into a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 575 (6th Cir. 2008)).

## II.   Factual Background

As indicated, Patrick F. Mifsud owns Entertainment Express, Inc., d/b/a Entertainment Limousine ("Entertainment Express"), which has provided for-hire limousine and motorbus transportation services throughout Metro Detroit for over twenty years. (Compl. ¶ 1, ECF No. 1.) Uber also provides for-hire limousine transportation services throughout Metro Detroit, as well as in other Michigan areas, through a mobile phone application. (*Id.* ¶¶ 4, 22.)

Michigan's Limousine Transportation Act and the Michigan Vehicle Code require limousine and other for-hire transportation companies operating in the

State to adhere to certain rules and regulations designed "[t]o ensure the public has access to safe and uniform means of vehicle-for-hire transportation." (*Id.* ¶ 21.) For example, the Limousine Transportation Act requires "[a] limo carrier of passengers" to obtain an MDOC certificate of authority in order to operate on a public highway. (*Id.* ¶ 39, quoting Mich. Comp. Laws § 257.1907(1).) Limo carriers must satisfy certain requirements to obtain an MDOT Certificate of Authority, such as passing an annual safety inspection and maintaining continuous commercial liability, personal injury protection, and property damage insurance coverage at specified levels. (*Id.* ¶ 40, citing Mich. Comp. Laws §§ 257.1911-1917.) Under the Michigan Vehicle Code, commercial vehicles must be specially registered with the Secretary of State, have a valid commercial vehicle registration plate attached at all times, and the driver must hold a valid chauffeur's license. (*Id.* ¶¶ 41-44, citing Mich. Comp. Laws §§ 257.7, .256, .301(4).) It is a misdemeanor to drive a commercial vehicle in violation of these regulations. (*Id.*, citing Mich. Comp. Laws §§ 257.215, .256, .327.)

Uber and its drivers knowingly operate in Michigan without complying with these rules. (*Id.* ¶ 46.) Nevertheless, the MDOT Defendants have never cited nor fined Uber or its drivers for violating the Limousine Transportation Act or the requirements for commercial vehicles under the Michigan Vehicle Code. (*Id.*

¶ 47.) Plaintiffs assert that this provides Uber and its drivers with a "substantial competitive advantage" over Plaintiffs. (*Id.* ¶ 52.)

In early to mid-2015, Mifsud complained to various individuals, including Defendants Edgar and Barnum, about MDOT's practice of not enforcing Michigan's laws against Uber or its drivers. (*Id.* ¶ 54.) Specifically, Mifsud contended that the fines and fees associated with the annual inspections, renewals of Certificates of Authority, and continuous commercial insurance required under the Limousine Transportation Act are unfair and over-burdensome. (*Id.* ¶ 55.) He also expressed concern that the laws were being applied unequally, as Uber was not required to follow them. (*Id.* ¶ 56.)

Plaintiffs allege that the MDOT Defendants, in retaliation, "vigorously enforced the Limousine Transportation Act, Motor Bus Transportation Act, and/or Michigan Vehicle Code against Plaintiffs." (*Id.* ¶ 57.) According to Plaintiffs, this resulted in Plaintiffs' motorbus and limousine operating licenses/Certificates of Authority being revoked on November 5, 2015, rendering Plaintiffs unable to provide for-hire passenger transportation services in Michigan. (*Id.* ¶ 58.)

### III. Applicable Law & Analysis

#### A. Equal Protection Claim

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats

one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005) (citing *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Plaintiffs do not allege infringement of a fundamental right or that they are members of a suspect class. Instead, they rely on a "class of one" theory to support their equal protection claim. (*See* Pls.' Resp. Br. at 13, ECF No. 30 at Pg ID 401.)

The United States Supreme Court recognized the "class of one" theory in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). In that case, a property owner asked the Village of Willowbrook to connect her property to the municipal water supply. *Id*. at 563. The Village initially conditioned the connection on the property owner granting it a 33-foot easement, even though the Village only required a 15-foot easement from other property owners seeking access to the water supply. *Id*. After several months, the Village relented and agreed to provide water service with only a 15-foot easement. *Id*. The property owner filed a lawsuit to recover the damages suffered because of the delay in accessing the water supply, claiming the Village's demand violated the Equal Protection Clause of the Fourteenth Amendment. *Id*. The property owner claimed the 33-foot easement demand was motivated by ill will resulting from her previous lawsuit against the Village and was "irrational and wholly arbitrary." *Id*.

The district court granted the Village's motion to dismiss for failure to state a viable claim under the Equal Protection Clause, and the Seventh Circuit Court of Appeals reversed. *Id.* at 563-64. The Supreme Court affirmed the appellate court's holding, reasoning that its "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564 (citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989)). Thus, the Court held that the property owner's assertion that the Village imposed a condition on the connection of her property to the municipal water supply unlike the condition imposed on other property owners, in addition to her allegation that the Village's demand was "irrational and wholly arbitrary," sufficiently stated "a claim for relief under traditional equal protection analysis." *Id.* at 565.

The "class of one" theory is inapplicable to the facts Plaintiffs allege in their Complaint, however. That is because Plaintiffs are not claiming that the MDOT Defendants treated *them* differently than other for-hire limousine drivers in the State. Instead, Plaintiffs allege that the MDOT Defendants treat all for-hire limousine drivers in the State, including Plaintiffs, equally *except Uber and its drivers*. In other words, the "class of one" in this case is comprised of Uber and its

9

drivers, not Plaintiffs. As such, unlike the property owner in *Olech*, Plaintiffs are "not … alleged to have been intentionally singled out by government for discriminatory adverse treatment." *See TriHealth*, 430 F.3d at 788 (finding that "the 'class of one' theory is ill-suited to the facts of th[e] case" where the plaintiffs were among several health care providers not receiving the county's distribution of tax levy funds which were awarded exclusively to one health care provider).

Recognizing a viable equal protection claim in this instance would be akin to allowing a driver ticketed for speeding to assert such a claim because not all speeding drivers are stopped and/or ticketed. As the Supreme Court recognized in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008):

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
>
> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of *604 people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for

> no reason does not invoke the fear of improper government classification.

*Id.* at 603-04. In short, the class-of-one theory of equal protection is not cognizable on the facts presented in Plaintiffs' Complaint.

The Court therefore grants the MDOT Defendants' motion to dismiss Plaintiffs' equal protection claim (Count I).[3]

### B. First Amendment Retaliation

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out[.]" *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)); *see also Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (the government may not punish a person or deprive him of a benefit based on his "constitutionally protected speech"). A plaintiff claiming the government has retaliated against him for engaging in protected speech generally must prove three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary

---

[3] In addition to claiming that Plaintiffs fail to state a viable "class of one" claim, the MDOT Defendants contend that Plaintiffs' equal protection claim should be dismissed because Plaintiffs are not similarly situated to Uber or its drivers and because Michigan has a rational basis for treating Uber and its drivers differently. With respect to Plaintiffs' equal protection and First Amendment claims, the MDOT Defendants also argue that Plaintiffs fail to allege specific unlawful acts of each individual defendant, which is required to establish their liability. The Court finds it unnecessary to reach these arguments, however, as it finds that Plaintiffs fail to allege a viable equal protection claim premised on their "class of one" theory.

11

>firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  The MDOT Defendants seek dismissal of Plaintiffs' First Amendment retaliation claim (Count II), arguing that Plaintiffs' allegations do not identify a sufficient causal connection between their speech and the revocation of their Certificates of Authority.

The MDOT Defendants identify two deficiencies in Plaintiffs' Complaint with respect to causation.  First, they point out that Plaintiffs identify only Defendants Edgar and Barnum as individuals to whom Mifsud voiced his complaints, but fail to explain why knowledge of these complaints should be imputed to the remaining defendants.  More specifically, Plaintiffs fail to connect the individuals aware of their protected conduct-- Edgar and Barnum-- to the individuals who issued the citations leading to the revocation of their Certificates of Authority and the Administrative Law Judge who presided over the revocation proceedings and decided to revoke the Certificates of Authority.  Plaintiffs allege that "Mifsud's protected speech was a substantial or motivating factor for the adverse actions."  (Compl ¶¶ 88-89)  However, as the MDOT Defendants indicate, this "formulaic recitation" of the elements of Plaintiffs' claim is insufficient to state a plausible legal claim.  *See Twombly, supra*.

12

Second, Defendants note that Plaintiffs fail to challenge MDOT's probable cause for revoking their Certificates of Authority at the revocation proceedings. In other words, Plaintiffs do not allege that MDOT's underlying factual basis for initiating the regulatory action was unfounded. Moreover, the MDOT Defendants contend, Plaintiffs could not do so where the Administrative Law Judge who ordered the revocations found that Plaintiffs knowingly violated the law.[4]

In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court held that a plaintiff bringing a First Amendment retaliation claim against a defendant for inducing a prosecutor to bring charges against the plaintiff must plead and prove the absence of probable cause for the prosecution. *Id*. at 266. In *Hartman*, the plaintiff sued United States Postal Service inspectors and an Assistant United States Attorney, alleging that they initiated a criminal prosecution against him in retaliation for his protected speech, specifically his criticism of the United States Postal Service. *Id*. at 253-54. The Supreme Court offered two reasons for holding that the absence of probable cause is a necessary element of the plaintiff's claim.

The first is the "powerful evidentiary significance" of probable cause to a retaliatory-prosecution claim. *Id*. at 261. As the Court explained:

> Like any other plaintiff charging official retaliatory action, the
> plaintiff in a retaliatory prosecution claim must prove the elements of

---

[4] On January 4, 2016, Plaintiffs filed a Claim of Appeal challenging the revocation in the Circuit Court for Wayne County Michigan. (ECF No. 37-3.) The state court dismissed the appeal with prejudice on May 2, 2016. (ECF No. 37-4.)

> retaliatory animus as the cause of injury, and the defendant will have the same opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus.  What is different about a prosecution case, however, is that there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge.

*Id.* at 260-61.  The second reason is that "the requisite causation between the defendant's retaliatory animus and the plaintiff's injury is usually more complex [in a retaliatory prosecution case] than it is in other retaliation cases."  *Id.* at 2261.  This complexity is due to the fact that, unlike the typical retaliation case, a retaliatory-prosecution action is brought against an official who "may have influenced the prosecutorial decision but did not himself make it . . .."  *Id.* at 262.  "Thus, the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another."  *Id.*  "[T]he absence of probable cause[,]" the Court reasoned, is the "connection" needed "to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity."  *Id.* at 263.

In *Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006), the Sixth Circuit Court of Appeals held that *Hartman*'s "rule sweeps broadly."  *Id.* at 719.  The *Barnes* court therefore granted qualified immunity to law-enforcement defendants who directly initiated an allegedly retaliatory grand jury proceeding against the plaintiff because

14

the defendants demonstrated probable cause. *Id*. at 719-20. The court held that the presence of probable cause to bring the grand jury proceeding foreclosed the plaintiff's First Amendment retaliation claim, which "fail[ed] as a matter of law." *Id*. at 720.

Finding the Supreme Court's rationale for requiring the pleading and proof of probable cause in a retaliatory-prosecution claim applicable, the Sixth Circuit also has held that *Hartman*'s rule applies to allegedly retaliatory regulatory enforcement proceedings. *Meadows v. Enyeart*, 627 F. App'x 496, 505-06 (6th Cir. 2015).[5] The *Meadows* court reasoned, "the highly probative value of probable cause does not change" whether the alleged retaliatory action is a regulatory-enforcement proceeding or a law-enforcement proceeding. *Id*. at 505. The court explained:

> Law-enforcement officials are duty bound to bring criminal charges against individual who violate the criminal code, and regulators are similarly bound to bring administrative actions against individuals who violate the administrative code. Qualified immunity shields both from liability for performing their duty to take action against persons who they have probable cause to believe committed a violation.

*Id*. at 505-06.

---

[5] In *Meadows*, the Sixth Circuit was reviewing the decision to grant summary judgment in favor of the defendants. 627 F. App'x at 499. This does not impact the applicability of the Sixth Circuit's decision to the present motion to dismiss. As the *Hartman* Court held, the absence of probable cause is an element of the plaintiff's case, which must be pleaded and proven. 547 U.S. at 265-66.

15

Here, Plaintiffs have not pleaded an absence of probable cause for the initiation of the administrative proceeding to revoke their Certificates of Authority. Even if Plaintiffs had included such an allegation in their Complaint, the ALJ's decision revoking their Certificates of Authority-- of which this Court may take judicial notice-- would belie such a claim. *See Opaka v. INS*, 94 F.3d 392, 394-95 (7th Cir. 1996) (citing cases from the Second, Seventh, Ninth, and Eleventh Circuits supporting the "well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice."); *see also Manguriu v. Lynch*, 794 F.3d 119, (1st Cir. 2015) (noting "that courts normally can take judicial notice of agency determinations"); *Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250 (3d Cir. 2000) ("[I]t is proper for this Court to take judicial notice of decisions of an administrative agency[.]")  The ALJ found, by a preponderance of the evidence, that Plaintiffs committed the violations of the Limousine Transportation Act and the Motor Bus Transportation Act, which MDOT submitted into evidence. (Decision & Ord. of Admin. Law Judge at 12, ECF No. 17-4 at Pg ID 145.)  The ALJ also found that Plaintiffs' violations were "willful and intentional[.]"[6]  (*Id.*)

---

[6] As the MDOT Defendants point out in their reply brief, MDOT officials completed only two of the eleven inspection reports submitted into evidence before the ALJ, and one of those reports was completed before Mifsud engaged in protected conduct. (*See* Certified Admin. R., ECF No. 18-2 at Pg ID 205-217.)

For these reasons, the Court concludes that Plaintiffs fail to state a claim upon which relief can be granted with respect to their First Amendment retaliation claim.

Accordingly,

**IT IS ORDERED** that the MDOT Defendants' motion to dismiss (ECF No. 17) is **GRANTED** and Defendants Sharon Edgar, Jean Ruestman, Rob Pearson, Brian Barnum, Michelle Weber-Currie, and Robbie Smith are **DISMISSED AS DEFENDANTS**.

                                                  s/ Linda V. Parker
                                                  LINDA V. PARKER
                                                  U.S. DISTRICT JUDGE

Dated: August 19, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 19, 2016, by electronic and/or U.S. First Class mail.

                                                  s/Keisha Jackson
                                                  Case Manager

---

The Michigan State Police issued the remaining violations on which the ALJ relied to make her decision. (*Id.*)